UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ALLISON WILLIAMS, :
:
                              Plaintiff, :
:    16-CV-8193 (VSB)
        - against - :
:    **OPINION & ORDER**
:
THE CITY OF NEW YORK, NEW YORK :
CITY HOUSING AUTHORITY, NEW YORK :
CITY COUNCIL SPEAKER MELISSA :
MARK-VIVERITO, MICHAEL KELLY and :
BRIAN CLARKE, :
:
                            Defendants :
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/2018

Appearances:

Marcel Florestal
Florestal Law Firm, PLLC
New York, New York
*Counsel for Plaintiff*

Jane E. Lippman
Donna M. Murphy
New York City Housing Authority
New York, New York
*Counsel for Defendants NYCHA, Michael Kelly, and Brian Clarke*

Heather M. Martone
New York City Law Department
New York, New York
*Counsel for Defendants the City of New York and*
*New York City Council Speaker Melissa Mark-Viverito*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Allison Williams brings this action alleging a hostile work environment based on race and national origin, in violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law §§ 296, *et seq.*, the New York City Human Rights Law (the

"NYCHRL"), N.Y. City Admin. Code §§ 8-107, *et seq.*, and 42 U.S.C. § 1981; aiding and abetting violations of the NYSHRL and the NYCHRL; conspiracy to deprive Plaintiff of her constitutional rights, in violation of 42 U.S.C. § 1985; deprivation of Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1983; violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and intentional infliction of emotional distress under the laws of the state of New York. (Am. Compl. ¶¶ 38–68.)[1]

Before me are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants New York City Housing Authority ("NYCHA"), Michael Kelly, and Brian Clarke (collectively, the "NYCHA Defendants"), (Doc. 19), and Defendants City of New York (the "City") and New York City Council Speaker Melissa Mark-Viverito (the "Council Speaker" and collectively, the "City Defendants"), (Doc. 22). For the reasons that follow, the NYCHA Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and the City Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. **Background**[2]

Plaintiff is an African-American who began her career working at NYCHA in 1984. (Am. Compl. ¶¶ 6, 12.) After rising through the ranks in various positions at NYCHA, she began working as the Manager of the Mill Brook Houses in 2006. (*Id.*) Prior to undertaking her position at the Mill Brook Houses, Plaintiff "had an unblemished employment record with NYCHA." (*Id.* ¶ 13.)

On June 30, 2015, Plaintiff's manager, James Artis, instructed her by email to attend a

---

[1] "Am. Compl." refers to the amended complaint filed by Plaintiff on October 28, 2016 ("Amended Complaint"). (Doc. 6.) The Amended Complaint appears to have been mistakenly titled Complaint. (*Id.*)

[2] The following factual summary is drawn from the allegations of the Amended Complaint, unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

meeting at the office of the Speaker of the New York City Council, Melissa Mark-Viverito, in the Bronx that same day. (*Id.* ¶ 14.) Several individuals, in addition to Plaintiff, were present at the meeting, including: the Council Speaker; Michael Kelly, the General Manager and second in command at NYCHA at the time, (*id.* ¶ 10); Brian Clarke, the Senior Vice President of Operations at NYCHA at the time, (*id.* ¶ 11); Sibyl Colon, the Director of the Optimal Property Management Department; Artis; and Gloria Cruz, a member of the Council Speaker's staff, (*id.* ¶ 16).

At the meeting, the Council Speaker asked, "How are you handling your Spanish speaking residents at Mill Brook Houses?" (*Id.* ¶ 17.) Artis replied that they followed NYCHA's written policy, which provides that they use a language bank containing NYCHA certified translators. (*Id.* ¶ 18.) In response, the Council Speaker slammed her hands on the table and exclaimed, "That's unacceptable!" (*Id.* ¶ 19.) She then stated that she was very unhappy with the management of the Mill Brook Houses and wanted to replace the manager (*i.e.*, Plaintiff) with a "Spanish Manager." (*Id.* ¶ 20.) Colon asked the Council Speaker whether she was aware of any specific complaints against Plaintiff, and Cruz responded that Plaintiff had one repair complaint against her. (*Id.* ¶ 22.) As she witnessed this event, Plaintiff "experienced traumatic psychological stress and numbness all over her body at the notion of losing her job just because she's not Latina." (*Id.* ¶ 21.) Plaintiff continued to have emotional stress following the event. (*Id.* ¶ 23.)

Following the meeting with the Council Speaker, Plaintiff began to experience difficulties at work. Due to the volume of Plaintiff's work related to the Mill Brook Houses, she had four housing assistants working under her. (*Id.* ¶ 24.) Over time, all four housing assistants left or were removed for various reasons, and three were never replaced. (*Id.* ¶ 25.) Plaintiff

3

instructed her assistant, Fredericka Dilworth, to make requests of NYCHA management on at least four occasions to replace her housing assistants, but they were not replaced. (*Id.* ¶ 26, Ex. A.) The lack of staff made it "virtually impossible" for Plaintiff to do her work, and Plaintiff continued to suffer from traumatic stress and sleeplessness as a result. (*Id.* ¶ 27.)

On August 28, 2015, Plaintiff attended a meeting with Clarke, Artis, Louise Ponce, and several other managers. (*Id.* ¶ 29.) At that meeting, Clarke questioned Plaintiff condescendingly, "how do you speak to Spanish people?" (*Id.* ¶ 30.) Plaintiff responded that she "use[s] the tools that the Housing Authority gives [her]." (*Id.*) Plaintiff claims that Clarke attempted to portray her as incapable of fulfilling the duties of her job. (*Id.* ¶ 31.) After the meeting, Plaintiff was emotionally distressed by Clarke's questioning because it was the same question the Council Speaker asked during the June 30 meeting. (*Id.*)

At some point in 2015, a housing assistant was sent to Mill Brook to assist Plaintiff, but she was untrained and unable to complete any work until she had completed an approximately month-long training. (*Id.* Ex. A.) On March 1, 2016, NYCHA assigned an individual named Alice Coutrier to work in Plaintiff's office,[3] but NYCHA management—contrary to protocol— failed to inform Plaintiff in advance that Coutrier would be assigned to her office. (*Id.* ¶ 34.) Coutrier also was not properly trained to assist Plaintiff in the assignments she was responsible for completing. (*Id.*) Ultimately Coutrier became "more of a liability than an asset," and Plaintiff "was forced to send her back to management." (*Id.* ¶¶ 34–35.)

At a time not specified in the Amended Complaint, Plaintiff discovered that her personnel issues were part of a scheme to replace her with a Latino. (*Id.* ¶¶ 36–37, 39.) Specifically, Plaintiff learned from Colon that Clarke ordered Colon to "go through [Plaintiff's] file to come

---

[3] It is unclear whether this individual was meant to fill one of the open housing assistant positions.

up with a pretextual reason to terminate her from her position, and replace[] [her] with a Latino." (*Id.* ¶ 36.) Colon also informed Plaintiff that Clarke forced Colon to utilize other employees at NYCHA, including Plaintiff's immediate supervisor and human resources employees, to create a plan to remove Plaintiff from her position under the pretext of the "cultural sensitivity" needs of the Mill Brook residents, and to replace her with a Latino. (*Id.* ¶ 37.) Both Clarke and Kelly played a role in "methodically reduc[ing]" Plaintiff's staff in order to make her fail. (*Id.* ¶ 39.) The overall scheme "was given the imprimatur" of Kelly. (*Id.* ¶ 37.)

## II. Procedural History

On October 19, 2016, Plaintiff commenced this action, alleging the following causes of action: (1) creation of a hostile work environment based on race and national origin, in violation of the NYSHRL ("First Cause of Action"); (2) creation of a hostile work environment based on race and national origin, in violation of the NYCHRL ("Second Cause of Action"); (3) aiding and abetting violations of the NYSHRL, in violation of § 296(6) of the NYSHRL ("Third Cause of Action"); (4) aiding and abetting violations of the NYCHRL, in violation of § 8-107(6) of the NYCHRL ("Fourth Cause of Action"); (5) conspiracy to deprive Plaintiff of her constitutional rights, in violation of 42 U.S.C. § 1985 ("Fifth Cause of Action"); (6) deprivation of Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1983 ("Sixth Cause of Action"); (7) creation of a hostile work environment based on race, in violation of 42 U.S.C. § 1981 ("Seventh Cause of Action"); (8) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution ("Eighth Cause of Action"); and (9) intentional infliction of emotional distress, in violation of the laws of the state of New York ("Ninth Cause of Action"). (Doc. 1 ¶¶ 38–68.) On October 28, 2016, Plaintiff filed an Amended Complaint alleging identical facts and causes of action. (*Compare* Doc. 1, *with* Am. Compl.)

On January 23, 2017, the NYCHA Defendants and the City Defendants separately requested a pre-motion conference in anticipation of filing motions to dismiss. (Docs. 14, 15.) Plaintiff filed letters responding to Defendants' requests on February 2, 2017. (Docs. 17, 18.) In Plaintiff's letters, she withdrew several of her claims. Specifically, with respect to the City Defendants, she "determined not to assert" (1) claims under 42 U.S.C. § 1983 and § 1985 for violations of the Due Process Clause of the Fourteenth Amendment; (2) claims under the NYSHRL, NYCHRL, and 42 U.S.C. § 1981 for hostile work environment; (3) claims under 42 U.S.C. § 1983 for failure to train, supervise, hire, or discipline; and (4) claims for intentional infliction of emotional distress. (Doc. 17.) With respect to NYCHA, Plaintiff withdrew her claims alleging municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Doc. 18.)

Rather than holding a pre-motion conference, the parties proceeded to brief the motions to dismiss. On March 6, 2017, the NYCHA Defendants filed their motion to dismiss the amended complaint, (Doc. 19), along with the declaration of Jane E. Lippman, (Doc. 20), and a memorandum of law, (Doc. 21), in support of their motion. The City Defendants filed their motion to dismiss on the same day, (Doc. 22), along with the declaration of Jacob Englander, (Doc. 24), and a memorandum of law, (Doc. 23), in support of their motion.[4] Plaintiff filed a consolidated opposition to both motions on April 10, 2017, (Doc. 25), and Defendants filed replies on April 24, 2017, (Docs. 26, 27).

On May 9, 2017, Plaintiff submitted a letter providing supplemental authority in regard to her aiding and abetting claims against the Council Speaker, (Doc. 28), to which the City

---

[4] Both the NYCHA Defendants and the City Defendants direct their motions against the Complaint. (*See* Docs. 19, 22.) Nevertheless, because Plaintiff's Amended Complaint asserts identical allegations and causes of action to her Complaint, (Doc. 6), I construe their motions to seek dismissal of the Amended Complaint.

6

Defendants responded on May 11, 2017, (Doc. 29).

### III. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Furthermore, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

7

**IV.    Discussion**

In her opposition, Plaintiff clarified that she was asserting no claims against the City, no claims against any Defendants for municipal liability under *Monell*, and no claims against the Council Speaker for violations of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 or § 1985, for hostile work environment pursuant to the NYSHRL, NYCHRL, and 42 U.S.C. § 1981, or for intentional infliction of emotional distress. (Pl.'s Opp. 4–5.)[5] Therefore, Plaintiff has withdrawn all of her Claims for Relief against the City, and the only remaining Claims for Relief are the following: (1) against NYCHA, the First, Second, Third, Fourth, Seventh, and Ninth Claims for Relief; (2) against the Council Speaker, the Third, Fourth, Fifth,[6] and Eighth[7] Claims for Relief; and (3) against Kelly and Clarke, all of the Claims for Relief.  I dismiss Plaintiff's withdrawn Claims for Relief and address only those that remain.

**A.    *Hostile Work Environment Claims (First, Second, and Seventh Causes of Action) Against NYCHA, Kelly, and Clarke***

**1.  Applicable Law**

Plaintiff alleges that she was subject to a hostile work environment under 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL.  An individual may be liable under § 1981 "only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks omitted).  A municipal entity "may not be held liable for its employees' violation of the rights enumerated in § 1981 under a theory of *respondeat superior*." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989).  To hold a

---

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 25.)

[6] I construe Plaintiff's Fifth Cause of Action to allege conspiracy to deprive Plaintiff's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment, pursuant to § 1985.

[7] I construe Plaintiff's Eighth Cause of Action to allege a violation of the Equal Protection Clause pursuant to § 1983.

municipal entity, such as NYCHA, liable under § 1981, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett*, 491 U.S. at 733–36); *Rivers v. N.Y.C. Hous. Auth.*, 176 F. Supp. 3d 229, 242 (E.D.N.Y. 2016) ("A municipal entity like NYCHA can only be held liable if its 'policy or custom . . . inflicts the injury.'") (quoting *Monell*, 436 U.S. at 694), *aff'd sub nom. Crenshaw v. N.Y.C. Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017).

To establish a hostile work environment under § 1981 and the NYSHRL, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying same standard under NYSHRL); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983, and the [NYSHRL] is essentially the same.").

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). Plaintiff must allege that the incidents were "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("The plaintiff must show more than a few isolated incidents of racial enmity." (internal quotation marks omitted)). "Incidents that are few

9

in number and that occur over a short period of time may fail to demonstrate a hostile work environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks omitted). However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011). "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *11–12 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

A court must consider the totality of the circumstances in evaluating a hostile work environment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

The standard applied for a hostile work environment claim under the NYCHRL is more liberal than its state and federal counterparts. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs." (internal citations and quotation marks omitted)). The NYCHRL "does not require . . . [a showing of] severe and pervasive conduct." *Id.* at 114. The plaintiff need only establish "differential treatment—that he was treated less well—because of a discriminatory intent." *Carter v. Verizon*, No. 13 Civ. 7579(KPF), 2015 WL 247344, at *8

10

(S.D.N.Y. Jan. 20, 2015) (quoting *Mihalik*, 715 F.3d at 110). However, "petty, slight, or trivial inconveniences are not actionable." *Bermudez*, 783 F. Supp. 2d at 579 (internal quotation marks omitted).

## 2. Application

Plaintiff argues that NYCHA should be held liable under § 1981 for creating a hostile work environment based on race. (Pl.'s Opp. 5–8.) However, Plaintiff represents in her opposition that "no claims [are] being asserted against the Defendants for municipal liability under *Monell*." (*Id.* at 4.) Plaintiff has therefore abandoned her § 1981 claim against NYCHA.

To the extent that Plaintiff has not abandoned her § 1981 claim against NYCHA, it nevertheless fails because Plaintiff has not alleged a policy or custom that caused her injury. *See Patterson*, 375 F.3d at 226. Nor does Plaintiff allege that Kelly or Clarke had "final policymaking authority" such that their acts represent the official policy of NYCHA. *See Chin v. N.Y.C. Hous. Auth.*, 575 F. Supp. 2d 554, 565 (S.D.N.Y. 2008) ("The relevant state law indicates that the NYCHA's three-person Board of Commissioners and the Commissioner of Citywide Administrative Services are the only people expressly granted final policymaking authority in the area of employment at the NYCHA."). As such, Plaintiff's § 1981 claim against NYCHA is dismissed.

However, I find that Plaintiff has plausibly alleged a hostile work environment claim under the NYSHRL and the NYCHRL against NYCHA and under § 1981, the NYSHRL, and the NYCHRL against Clarke and Kelly. Plaintiff's hostile work environment claims rest on the following allegations: (1) at a work-related meeting at the Council Speaker's office in the Bronx on July 30, 2015, the Council Speaker "state[d] that she was very unhappy with the management of the Mill Brook Houses, and wanted to replace the current manager with a 'Spanish

11

Manager,'" (Am. Compl. ¶ 20 (emphasis omitted)); (2) during an unspecified period following the meeting, three of Plaintiff's four housing assistants left NYCHA and were not replaced, at Kelly's and Clarke's direction, resulting in Plaintiff's workload increasing dramatically, (*id.* ¶¶ 24–27, 39); (3) on August 25, 2015, Plaintiff attended a meeting with Clarke and other NYCHA employees, where Clarke, "in a condescending manner, demanded to know from [Plaintiff], 'how do you speak to Spanish people,'" (*id.* ¶¶ 29–30); (4) on March 1, 2016, NYCHA assigned an individual to work for Plaintiff who was not properly trained and who Plaintiff ultimately sent back to management, (*id.* ¶¶ 34–35); (5) on an unspecified date, Colon reported to Plaintiff that Clarke ordered her to go through Plaintiff's file to find "a pretextual reason to terminate [Plaintiff] from her position, and replaced with a Latino," (*id.* ¶ 36); and (6) on an unspecified date, Colon reported to Plaintiff that Clarke, with "the imprimatur of . . . Kelly," forced Colon and other NYCHA employees "to devise a plan to remove [Plaintiff] from her position under the pretext of the 'cultural sensitivity' needs of the Mill Brook residents, and replaced with a Latino," (*id.* ¶ 37).

On their own, many of Plaintiff's individual allegations appear innocuous, or at the most, mere offensive utterances and trivial inconveniences that would not be actionable. However, when considering the totality of the circumstances—in particular, the allegations regarding Clarke's instructions to other NYCHA employees, including human resources personnel and Plaintiff's direct supervisor, to find a pretext to terminate Plaintiff and replace her with a Latino—Plaintiff's allegations depict a scheme orchestrated by Clarke to oust Plaintiff from her position on the basis of her race and/or national origin. The scheme, as alleged, was sufficiently continuous and concerted as to have altered the conditions of Plaintiff's employment, as Plaintiff's job became significantly more difficult because three of her four housing assistants

12

were never replaced, despite repeated ignored requests for replacements, (*id.* ¶¶ 25–27), and because she was assigned an individual who was not properly trained to assist her, requiring Plaintiff ultimately to send that individual back to management, (*id.* ¶¶ 34–35). A reasonable person who had knowledge of such a scheme—as Plaintiff did[8]—would find such a work environment hostile or abusive. Plaintiff thus plausibly alleges facts that state a claim for a hostile work environment.[9]

The NYCHA Defendants contend that the Council Speaker's comment was not discriminatory, and regardless, it was not made by a NYCHA employee, and thus did not contribute to a hostile work environment. (NYCHA Defs.' Mem. 5–6.)[10] As an initial matter, the Council Speaker's statement that she wanted to replace Plaintiff, an African-American, with a "Spanish Manager," (Am. Compl. ¶ 20), could plausibly be interpreted as evincing discriminatory animus. In any event, while the NYCHA Defendants are correct in noting that the Council Speaker was not an employee of NYCHA, her comment nevertheless contributed to a hostile work environment. In the context of Plaintiff's other allegations—including Clarke's questioning at the August 28 meeting about how Plaintiff communicated with Spanish speakers, the impediments to Plaintiff's ability to complete her work, and the scheme to find pretext to

---

[8] The fact that Plaintiff learned second-hand, through Colon, of the alleged scheme to replace her does not alter my analysis. The Second Circuit has held that "the mere fact that the plaintiff was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim because the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." *Whidbee*, 223 F.3d at 71 (internal quotation marks omitted); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2000) (holding that racially derogatory comments made outside the presence of plaintiff could contribute to an overall hostile work environment), *superseded on other grounds by* N.Y.C. Local L. No. 85. I find that this holding applies here to the alleged efforts to terminate Plaintiff's employment for discriminatory reasons made outside her presence but with her knowledge.

[9] If, after discovery, Plaintiff is unable to establish that there was an effort at the direction of Clarke and/or Kelly to terminate Plaintiff's employment and replace her with a Latino, it is unlikely Plaintiff's hostile work environment claims will survive summary judgment.

[10] "NYCHA Defs.' Mem." refers to the Memorandum of Law in Support of Defendants New York City Housing Authority, Michael Kelly, and Brian Clarke's Motion to Dismiss the Complaint, filed March 6, 2017. (Doc. 21.)

13

replace Plaintiff—Plaintiff could have reasonably believed that the Council Speaker's statement had some influence on and/or triggered her supervisors' attempts to replace her with a Latino, thus contributing to the hostile work environment.

The NYCHA Defendants also argue that Plaintiff fails to establish a hostile work environment because she fails to allege that she was treated less well than others because of her race or national origin, or that her race or national origin was the cause of Plaintiff's work impediments. However, the NYCHA Defendants appear to misconstrue the standard for establishing a hostile work environment, which does not require a showing of disparate impact, but instead requires a plaintiff to establish "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted). The failure of NYCHA management to replace three out of four of Plaintiff's departed housing assistants, (*id* ¶¶ 24–27), and the assignment to Plaintiff's office of an inadequately trained employee, (*id.* ¶¶ 34–35), could have been caused by a variety of non-discriminatory factors. However, assuming these facts to be true, drawing all inferences in Plaintiff's favor, and viewing these facts in the context of the alleged scheme to manufacture pretext to terminate Plaintiff, it is plausible that those personnel decisions were driven by discriminatory animus. At this stage, I decline to dismiss Plaintiff's action, and will permit further development of the facts through discovery.

Because the totality of the circumstances, based on Plaintiff's allegations, depicts an environment "that a reasonable employee would find the conditions of her employment altered for the worse," *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis and internal quotation marks omitted), I find that Plaintiff has adequately alleged claims for hostile work

14

environment under the NYSHRL and the NYCHRL against NYCHA[11] and under § 1981, the NYSHRL, and the NYCHRL against Clarke and Kelly.

### B. *Aiding and Abetting Claims (Third and Fourth Causes of Action) Against NYCHA, Kelly, Clarke, and Council Speaker*

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). "It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (quoting *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)). The New York Court of Appeals recently held § 296(6) "extends liability to persons and entities beyond joint employers, and this provision should be construed broadly." *Griffin v. Sirva, Inc.*, 76 N.E.3d 1063, 1070 (N.Y. 2017). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks omitted).

The City Defendants contend that the Council Speaker cannot be held liable for aiding and abetting because she was not Plaintiff's employer. (City Defs.' Mem. 13–15.)[12] However, the Court of Appeals has clearly held that § 296(6)'s use of the "any person" language should be "construed broadly." *Griffin*, 76 N.E.3d at 1070. The Court explained that:

> [N]othing in the statutory language or legislative history [of § 296(6)] limits the

---

[11] Although the NYCHA Defendants do not argue that NYCHA is not liable for its employees' conduct, I note that "an employer is presumed to bear absolute liability in cases where, as here, the harassment is perpetrated by the victim's supervisor." *Terry*, 336 F.3d at 148 n.20.

[12] "City Defs.' Mem." refers to the Memorandum of Law in Support of City Defendants' Motion to Dismiss, filed March 6, 2017. (Doc. 23.)

15

> reach of this provision to employers. Indeed, the purpose of subdivision (6) was to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so, as well as to furnish protection to all persons, whether employers, labor organizations or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices.

*Id.* (internal quotation marks omitted). The City Defendants attempt to distinguish *Griffin* by highlighting that the defendant in *Griffin* was a company that conducted background checks that entered into a contract with the employer to conduct background checks, whereas here, the Council Speaker had no legal relationship with NYCHA or Plaintiff. (Doc. 29.) However, nothing in *Griffin*, the language of § 296(6), or the legislative history suggests a requirement that the aider and abettor must have a legal relationship with the employer in order to be held liable. Due to the Court of Appeals' broad interpretation of § 296(6), I find that § 296(6) is applicable to the Council Speaker.

The City Defendants also contend that even if § 296(6) applies to the Council Speaker, her comments did not evince discriminatory animus, nor did they lead to any discriminatory acts against Plaintiff. (City Defs.' Mem. 15.) As discussed above, the Council Speaker's comments could plausibly be interpreted as evincing discriminatory animus on the basis of race and/or national origin. Moreover, the Council Speaker's comments, in addition to the role of her assistant, Cruz, in "devis[ing] a plan to remove [Plaintiff] from her position under the pretext of the 'cultural sensitivity' needs of the Mill Brook residents, and replaced with a Latino," (Am. Compl. ¶ 37), plausibly suggest that the Council Speaker had some influence on the alleged discriminatory acts of NYCHA, Clarke, and Kelly.

With respect to Defendants Clarke and Kelly, Plaintiff has alleged sufficient conduct by them. (*See, e.g.*, Am. Compl. ¶¶ 29–31, 36–37, 39.) As such, the NYCHA Defendants' motion to dismiss Plaintiff's aiding and abetting claim against Defendants Clarke and Kelly is denied.

16

### C. *Equal Protection Claims Under § 1983 and § 1985(3) (Fifth and Eighth Causes of Action) Against Kelly, Clarke, and Council Speaker*

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). A plaintiff may establish a § 1983 claim under a hostile work environment theory.[13] *Littlejohn*, 795 F.3d at 320 ("Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race." (internal quotation marks omitted)). For an individual to be held liable under § 1983, she must be personally involved in the deprivation of the plaintiff's rights. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Direct participation in the deprivation indicates personal involvement. *Id.*

Plaintiff has alleged that both Clarke and Kelly acted under color of state law because they "conduct[ed] themselves as supervisors for a public employer." *Annis*, 36 F.3d at 254. In addition, as discussed above, Plaintiff has adequately alleged that both Clarke and Kelly directly participated in creating a hostile work environment for Plaintiff. (*See, e.g.*, Am. Compl. ¶¶ 29–31, 36–37, 39.) Therefore, Plaintiff's § 1983 claims against Clarke and Kelly survive. However, because the Council Speaker was not Plaintiff's employer, supervisor, or co-worker, Plaintiff fails to allege a hostile work environment claim against the Council Speaker, and therefore this claim against her must be dismissed.

"To make out a claim under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2)

---

[13] A claim for hostile work environment under § 1983 is analyzed in the same manner as a claim for hostile work environment under § 1981. *See Littlejohn*, 795 F.3d at 320–21.

for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 386 (S.D.N.Y. 2014), *aff'd*, 622 F. App'x 38 (2d Cir. 2015). "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). Claims for conspiracy under § 1985 "are held to a heightened pleading standard." *Van Dunk v. St. Lawrence*, 604 F. Supp. 2d 654, 663 (S.D.N.Y. 2009). Additionally, "the conspiracy must be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Miller*, 71 F. Supp. 3d at 386 (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Although the allegations regarding a scheme to create pretext to replace Plaintiff with a Latino are sufficient to sustain Plaintiff's hostile work environment claim, they are insufficient to meet the heightened pleading threshold for § 1985 conspiracy claims. Plaintiff fails to provide specific factual allegations regarding a meeting of the minds among Clarke, Kelly, or the Council Speaker, and therefore, her § 1985 claim does not survive. *See Webb*, 340 F.3d at 111 ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."). However, Plaintiff's § 1985 conspiracy claim is dismissed without prejudice to Plaintiff amending her pleading should discovery reveal more concrete facts regarding the alleged scheme to replace Plaintiff on the basis of her race and/or national origin.

### D. IIED Claims (Ninth Cause of Action) Against NYCHA, Kelly, Clarke, and Council Speaker

"Under New York Law, to establish a cause of action for IIED, a plaintiff must prove: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress.'" *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656 (S.D.N.Y. 2015) (quoting *Carroll v. Bayerische Landesbank*, 150 F. Supp. 2d 531, 538 (S.D.N.Y. 2001)). The standard for establishing an IIED claim is extremely difficult. *See id.* As such, "New York courts regularly deny intentional infliction of emotional distress claims in employment discrimination cases." *Daniels v. Health Ins. Plan of Greater N.Y.*, No. 02CIV6054MBM, 2005 WL 1138492, at *3 (S.D.N.Y. May 12, 2005). Indeed, "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Cowan*, 95 F. Supp. 3d at 656 (quoting *Daniels*, 2005 WL 1138492, at *3).

Plaintiff here has not alleged facts supporting the extreme and outrageous conduct necessary to support an IIED claim. *See Daniels*, 2005 WL 1138492, at *3 (dismissing IIED claim where plaintiff alleged rude and unfair treatment, extra work, failure to accommodate her disability, and discriminatory termination). As such, Defendants' motions to dismiss Plaintiff's IIED claim are granted.

### V. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part.

Defendants' motions to dismiss are GRANTED with respect to: (1) all Claims for Relief

19

against the City; (2) the First, Second, Fifth, Sixth, Seventh, Eighth, and Ninth Claims for Relief against the Council Speaker; (3) the Fifth, Sixth, Seventh, Eighth, and Ninth Claims for Relief against NYCHA; and (4) the Fifth and Ninth Claims for Relief against Clarke and Kelly.

Defendants' motions to dismiss are DENIED with respect to: (1) the Third and Fourth Claims for Relief against the Council Speaker; (2) the First, Second, Third, and Fourth Claims for Relief against NYCHA; and (3) the First, Second, Third, Fourth, Sixth, Seventh, and Eighth Claims for Relief against Clarke and Kelly. Defendants shall file their answers to the Amended Complaint within twenty-one (21) days of the entry of this Opinion & Order.

The Clerk of Court is respectfully directed to terminate Defendant City of New York. The Clerk of Court is also respectfully directed to terminate the open motions at Docket Nos. 19 and 22.

SO ORDERED.

Dated: September 10, 2018
New York, New York

Vernon S. Broderick
United States District Judge